UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____7/7/17_____

-------------------------------------------------------------- X

BEVERLY BATISTE,                                        :
                                                       :
                                      Plaintiff,       :
                                                       :                16-CV-3358 (VEC)
                   -against-                            :
                                                       :                MEMORANDUM
THE CITY UNIVERSITY OF NEW YORK,                       :                OPINION & ORDER
RESEARCH FOUNDATION OF CUNY,                           :
CELESTE CLARKE, individually and in her                :
official capacity, and SURI DUITCH, individually       :
and in her official capacity,                          :
                                                       :
                                                       :
                                      Defendants.      :

-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Beverly Batiste brings this action against The City University of New York

("CUNY"), the Research Foundation of The City University of New York ("RFCUNY"), Celeste

Clarke ("Clarke"), and Suri Duitch ("Duitch") (collectively, "Defendants"), alleging violations

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title

VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"), the

Executive Law of the State of New York, New York State Human Rights Law, Section 296, *et

seq*. ("NYSHRL"), and the Administrative Code of the City of New York, New York City

Human Rights Law, Section 8-101, *et seq*. ("NYCHRL").  Plaintiff also alleges breach of

contract and breach of fiduciary duty.  Defendants have moved to dismiss the Complaint for

failure to state a claim.  For the following reasons, Defendants' motions are GRANTED.

Plaintiff, a black female over the age of forty, was employed by RFCUNY between May 1, 2002 and October 26, 2015. Am. Compl. ¶¶ 29, 74 (Dkt. 15). RFCUNY is a private, not-for-profit education corporation that supports CUNY faculty and staff in identifying, obtaining and administering government and private funding. Decl. of Christopher G. Gegwich in Supp. of RFCUNY and Clarke's Mot. to Dismiss the First Am. Compl. ("Gegwich Decl."), Ex. A (Dkt. 30-1). When employed by RFCUNY, Plaintiff provided office support and handled programs and office operations at CUNY and RFCUNY. Am. Compl. ¶¶ 31, 32. As of June 2012, Plaintiff's title was Administrative Assistant, but she performed tasks generally given to office managers and assistant managers. *Id.* ¶¶ 33, 34. Plaintiff's job performance was excellent. *Id.* ¶ 35.

In May 2015, Clarke became Plaintiff's direct supervisor. *Id.* ¶ 36. Clarke and her supervisor, Duitch, recognized that Plaintiff's salary and title did not match the work she was performing. *Id.* ¶¶ 38, 41, 42. To that end, on July 20, 2015, Clarke told Plaintiff that she "wanted to discuss . . . getting [Plaintiff's] job title changed to reflect [her] job duties and a salary increase." *Id.* ¶ 44. Instead of receiving a promotion, however, on August 11, 2015, in a meeting with Clarke and Duitch, Plaintiff received a Corrective Action Plan ("CAP"). *Id.* ¶ 45. Pursuant to the CAP, Plaintiff was required to improve her performance by November 3, 2015, or face disciplinary action, including termination. *Id.* ¶ 51. During the August 11 meeting, Duitch threw a pen on the table in the direction of Plaintiff. *Id.* ¶ 46. There were no complaints or write-ups against Plaintiff before or during the time Clarke and Duitch were Plaintiff's supervisors; Plaintiff believes Defendants' "malicious and discriminatory intent[,]" rather than

---

[1] The facts are taken from the Amended Complaint, and for purposes of this motion, are assumed to be true. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

Plaintiff's performance, was the reason for the CAP. *Id.* ¶¶ 49, 50, 52. Clarke accused Plaintiff of being disrespectful when she learned she was not being promoted. *Id.* ¶ 55.

The following day, Plaintiff complained to Eric Hoffman ("Hoffman"), the University Director for Collaborative Programs, about the unfair and inaccurate write-up she had received. *Id.* ¶ 53. Plaintiff also complained to Duitch about Clarke and the CAP, but Duitch refused to accept Plaintiff's rebuttal to the CAP or her complaint, declined to conduct an investigation, and suggested it would be a waste of time to submit a rebuttal. *Id.* ¶¶ 58, 59. Plaintiff also complained to the Senior Director of Human Resources, who refused to review Plaintiff's complaint because it was "voluminous." *Id.* ¶¶ 60, 61. The Amended Complaint does not allege that any of these complaints referenced discrimination. *Id.* ¶¶ 53, 58-61.

In September 2015, as requested by Clarke, Plaintiff scheduled an exterminator to come to the building where she worked. *Id.* ¶¶ 63, 64. Clarke also ordered an exterminator. *Id.* ¶ 65. As a result of the duplicative exterminators, Plaintiff received another CAP on October 8, 2015. *Id.* ¶ 62; Decl. of Rudy A. Dermesropian in Opp. to RFCUNY and Clarke's Mot. to Dismiss ("Dermesropian Decl. Opp. RFCUNY"), Ex. 3 (Dkt. 35-3). On October 26, 2015, Clarke and Duitch terminated Plaintiff's employment. *Id.* ¶ 74.

Plaintiff alleges the following facts to support her claim that she was discriminated against: an Asian female who reported directly to Clarke, Mary Louie, had "performance issues" but received a promotion and salary increase rather than being terminated, *id.* ¶ 69; Hoffman told Plaintiff that John Mogulescu, a Dean at CUNY ("Dean Mogulescu"), had stated, in substance, that Plaintiff, as a black woman, needed to be supervised by a black woman, *id.* ¶ 70; and Plaintiff was replaced by a younger employee. *Id.* ¶ 79.

After being terminated, Plaintiff filed a charge of race discrimination against CUNY with the U.S. Equal Employment Opportunity Commission ("EEOC"). Dermesropian Decl. Opp.

RFCUNY, Ex. 3. Plaintiff did not name RFCUNY in the EEOC charge, and Plaintiff selected only "race discrimination" among the options provided on the EEOC charge form. *Id.* The EEOC dismissed the charge in January 2016. Gegwich Decl., Ex. C (Dkt. 30-3).

On July 14, 2016, Plaintiff filed an Amended Complaint with this Court. She brings a mélange of claims against Defendants, but she brings federal law claims against only CUNY and RFCUNY. Plaintiff brings Title VII claims for race and color discrimination, hostile work environment, and retaliation against CUNY and RFCUNY; Plaintiff brings similar claims against Clarke and Duitch, but pursuant to NYSHRL and NYCHRL. Plaintiff brings an ADEA age discrimination claim against only RFCUNY, an NYSHRL age discrimination claim against all Defendants, and an NYCHRL age discrimination claim against RFCUNY, Clarke, and Duitch. Finally, Plaintiff alleges a breach of contract claim against CUNY and RFCUNY.

## DISCUSSION

For the reasons discussed below, Plaintiff's Title VII and ADEA claims against CUNY and RFCUNY are dismissed. Plaintiff failed to exhaust administrative remedies with respect to her claims for age discrimination, hostile work environment, and retaliation, and she failed to allege sufficient facts to state a plausible claim for race, color, or age discrimination, hostile work environment, or retaliation pursuant to Title VII and the ADEA. Because the Court dismisses all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state and local law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").

## I.     Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), courts "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts consistent with the complaint that would entitle [her] to relief." *Meyer*, 761 F.3d at 249.

## II.     Failure to Exhaust Administrative Remedies

Although Plaintiff exhausted her administrative remedies with respect to her race and color discrimination claims against CUNY and RFCUNY, she failed to exhaust her age discrimination, hostile work environment, and retaliation claims.

### A.  Absence of RFCUNY in the EEOC Complaint

In order to bring a federal lawsuit under Title VII or the ADEA, a plaintiff must first exhaust her administrative remedies with the EEOC. 42 U.S.C. § 2000e-5(e); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (Title VII); 29 U.S.C. § 626(d); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 562 (2d Cir. 2006) (ADEA). In general, a plaintiff may not bring a civil suit under Title VII or the ADEA against a party not named as a respondent in the EEOC charge. *France v. Touro Coll.*, No. 14 CIV. 4613 (NGG) (CLP), 2016 WL 1105400 at *4 (E.D.N.Y. Feb. 16, 2016) (Title VII); *Hanley v. Chi. Title Ins. Co.*, No. 12 CIV. 4418 (ER), 2013 WL 3192174 at *4 (S.D.N.Y. June 24, 2013) (ADEA). There is an exception to the general rule which permits a plaintiff to proceed with a Title VII or ADEA action against a party not named in the EEOC

charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson*, 931 F.2d at 209 (Title VII); *see also Jackson v. N.Y.C. Transit*, No. 05 CIV. 1763 (FBLB), 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005) (ADEA).

The Second Circuit has adopted a four part test to determine whether an identity of interest exists, taking into consideration:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). In addition to these factors, *Johnson* implied a fifth factor relevant to the identity of interest inquiry: whether the defendant, although not named as a respondent in the caption, is named in the body of the charges as having played a role in the discrimination. *Hanley*, 2013 WL 3192174, at *5. "This multi-factor test is not a mechanical one, and no single factor is dispositive." *Zustovich v. Harv. Maint., Inc.*, No. 08 CIV. 6856 (HB), 2009 WL 735062, at *8 (S.D.N.Y. Mar. 20, 2009).

In the present case, there is an identity of interest between RFCUNY and CUNY. First, the roles of RFCUNY and CUNY are overlapping and somewhat unclear. Plaintiff alleges that CUNY exercises control over RFCUNY's employees, Am. Compl. ¶ 30, and RFCUNY "works closely with CUNY" in its mission to support CUNY faculty and staff in identifying, obtaining, and administering outside funding. Gegwich Decl., Ex. A (Dkt. 30-1). "Thus, is it not surprising that an employee might not understand, in filing an EEOC complaint, that both [RFCUNY] and

[CUNY] should be named." *Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 305 (E.D.N.Y. 2007).

Second, under the circumstances of this case, RFCUNY and CUNY have similar interests with respect to conciliation and compliance. Clarke, an employee of RFCUNY, and Duitch, an employee of CUNY, were both directly involved in Plaintiff's termination, Am. Compl. ¶ 74, and Plaintiff described Clarke's involvement in the EEOC charge. Dermesropian Decl., Opp. RFCUNY, Ex. 3. Clarke and Duitch's joint involvement in Plaintiff's termination establishes that RFCUNY and CUNY possess "a commonality of interests." *See Dortz v. City of N.Y.*, 904 F. Supp. 127, 143 (S.D.N.Y 1995) (finding the second element satisfied because employees of the unnamed party "were directly involved in the events giving rise to th[e] action").

RFCUNY argues that RFCUNY and CUNY do not share common interests and that Plaintiff was required to name RFCUNY in the EEOC complaint because the National Labor Relations Board ("NLRB") has determined that RFCUNY and CUNY are not a single employer. *Res. Found. of The City Univ. of N.Y.*, 337 NLRB. 965, 971 (2002). The NLRB's finding is not dispositive, however. Different tests apply to determine whether two entities constitute a single employer, and thus share liability under Title VII, and whether two entities share an identity of interest, and thus need not both be named in EEOC complaints. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241-42 (2d Cir. 1995) (adopting the NLRB test to assess single employer status and separately examining the *Johnson* factors to assess identity of interest). The NLRB test looks at objective criteria to determine whether two entities constitute a single employer, *Res. Found.*, 337 NLRB. at 970, while the *Johnson* test takes into consideration both the plaintiff's subjective understanding and objective factors. The relevant distinction is that the second *Johnson* factor requires a case-specific assessment of the two entities' interests. *See Johnson*, 931 F.2d at 209-10 ("whether, *under the circumstances*, the interests of a named [party]

are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings") (emphasis added). Notwithstanding NLRB's general finding that RFCUNY's labor relations policies and practices are independently administered by RFCUNY, *Res. Found.*, 337 NLRB at 971, in this case it is clear that the two entities share a similar interest with respect to conciliation and compliance.

With respect to the third factor, because the EEOC dismissed Plaintiff's charge, there is no indication that RFCUNY was prejudiced by not being named in the charge. *See Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00 CIV. 1983 (LAP) (JCF), 2002 WL 31027580, at *7 (S.D.N.Y. Sept. 11, 2002) ("[T]he EEOC dismissed plaintiff's charge because it was unable to determine that [the named defendant] violated the statutes, so there is no evidence the [unnamed defendant] was prejudiced."). As to the fourth factor, although Plaintiff believes that CUNY exercises control over RFCUNY employees, Am. Compl. ¶ 30, there is no indication that RFCUNY represented to Plaintiff in any way that its relationship with Plaintiff was to be through CUNY.

Finally, Plaintiff satisfied the implicit fifth factor, which considers whether the defendant was, at a minimum, named in the body of the EEOC charge. While Plaintiff did not name RFCUNY in the body of the EEOC charge, Plaintiff did name Clarke, an employee of RFCUNY, and Plaintiff described Clarke's role in the alleged discrimination. The fact that Clarke was named in the EEOC complaint should have given RFCUNY notice that it was potentially liable for Clarke's conduct. *Zustovich*, 2009 WL 735062, at *9.

Because only the fourth *Johnson* factor weighs in favor of Defendants, the Court finds that the identity of interest exception applies. *See Zhao*, 472 F. Supp. 2d at 306 (finding identity of interest exception applicable where only the fourth factor favored defendants). As such, any

administrative remedies for particular claims exhausted against CUNY will be deemed to have been exhausted against RFCUNY as well.

### B. Failure to Exhaust Administrative Remedies for Particular Claims

Plaintiff failed to exhaust her claims against CUNY and RFCUNY for age discrimination, hostile work environment, and retaliation. A district court has jurisdiction to hear Title VII and ADEA claims that either are included in an EEOC charge or are based on conduct that is "reasonably related" to that alleged in the EEOC charge. *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (ADEA); *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (Title VII). There are three situations in which claims not raised in an EEOC charge will be deemed "exhausted":

> 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Butts*, 990 F.2d at 1402-03 (internal quotation marks omitted).

Plaintiff's claim of color discrimination falls into the first of the above categories and thus was properly exhausted. *See Clements v. St. Vincent's Hosp. and Med. Ctr. of N.Y.*, 919 F. Supp. 161, 164 (S.D.N.Y. 1996) ("A color discrimination claim and a race discrimination claim are 'of the same type and character' such that 'the defendant cannot claim to be unfairly surprised by the allegation of [color] discrimination.'") (quoting *Avagliano v. Sumitomo Shoji Am.*, 614 F. Supp. 1397, 1403 (S.D.N.Y. 1985)). In contrast, Plaintiff's age discrimination, hostile work environment, and retaliation claims are not sufficiently related to the race discrimination claim described in the EEOC charge, and thus, have not been exhausted.

### i. Age Discrimination

Plaintiff's age discrimination claim is not reasonably related to the claim of race discrimination that she filed with the EEOC. While the Amended Complaint states that Plaintiff filed a timely complaint of discrimination with the EEOC, Am. Compl. ¶ 27, the EEOC charge itself makes absolutely no reference to age discrimination, Dermesropian Decl. Opp. RFCUNY, Ex. 3. Instead, Plaintiff complained to the EEOC that "management is biased against [her] because [she is] black." *Id.*

Because *nothing* in Plaintiff's charge provided the EEOC with notice of possible age discrimination, Plaintiff's claim that she was discriminated against based on age does not fall within the scope of the EEOC investigation that one could reasonably expect to grow out of the EEOC charge. *See Littlejohn v. City of New York*, 795 F.3d 297, 324 (2d Cir. 2015) (affirming the district court's dismissal of a sexual harassment claim because the EEOC charge only claimed race discrimination); *Carter v. New Venture Gear, Inc.*, 310 F. App'x. 454, 458 (2d Cir. 2009) (plaintiff could not bring gender discrimination claims because the EEOC charge only raised race-based complaints); *Givens v. City of New York*, No. 11 CIV. 2568 (PKC)(JCF), 2012 WL 75027, at *6 (S.D.N.Y. Jan. 10, 2012) ("[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.") (internal quotation marks omitted). Nor does Plaintiff's age discrimination claim fall into the second or third *Butts* categories because Plaintiff alleges that age discrimination occurred before she filed the EEOC charge.

### ii. Hostile Work Environment

Plaintiff also failed to exhaust her administrative remedies with respect to her Title VII hostile work environment claim. "To present a hostile work environment claim to the EEOC, a plaintiff must have alleged facts sufficient to suggest 'a pervasive, abusive environment upon

which a rational trier of fact could find that he was subjected to a hostile work environment due to his [membership in a protected class].'" *Wright v. N.Y.C. Off–Track Betting Corp.,* No. 05 Civ. 9790 (WHP), 2008 WL 762196, at *3 (S.D.N.Y. Mar. 24, 2008) (*quoting Bazile v. City of N.Y.*, 215 F. Supp. 2d 354, 361 (S.D.N.Y. 2002)).

Plaintiff's EEOC charge contains nothing to suggest that she was the victim of a hostile work environment. Aside from a single conclusory assertion that Plaintiff was "harassed . . . in violation of Title VII," the allegations in the EEOC charge suggest only that Plaintiff's job performance was unfairly and inaccurately criticized on two occasions and that the motives behind Plaintiff's eventual termination were questionable. *See* Dermesropian Decl. Opp. RFCUNY, Ex. 3 ("[T]he unfair write-up was writhe with inaccuracies"; "My supervisor, inaccurately portrayed [a telephone] conversation as one in which I was either disrespectful for hanging-up the telephone or not being receptive to her criticism"; "[M]y supervisor incorrectly concluded, I had not [completed a task]."). Plaintiff's hostile work environment claims are not reasonably related to the claims raised in the EEOC complaint, which mention only several discrete instances of general unfair treatment. *See Perez v. N.Y. and Presbyterian Hosp.*, No. 05 CIV. 5749 (LBS), 2009 WL 3634038, at *10 (S.D.N.Y. Nov. 3, 2009) ("[T]he allegations in the EEOC charge relate solely to several discrete instances of alleged discrimination or retaliation, which are insufficient to exhaust a hostile work environment claim.") Nor does Plaintiff's hostile work environment claim fall into the second or third *Butts* categories because Plaintiff alleges that the hostile work environment existed before she filed the EEOC charge.

### iii. Retaliation

Plaintiff's retaliation claim is also not reasonably related to the allegation of racial discrimination. Although Plaintiff's EEOC charge mentions that Plaintiff complained internally, nowhere does it suggest that Plaintiff was terminated because of her complaints; rather, the

charge states "[i]t is my contention that management is biased against me because I am Black." Dermesropian Decl. Opp. RFCUNY, Ex. 3. "Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive." *Gambrell v. Nat'l R.R. Passenger Corp.,* No. 01 CIV. 6433 (NRB), 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003); *see also Batista v. DeGennaro*, No. 13 CIV. 1099 (DAB), 2014 WL 1046735, at *6 (S.D.N.Y. Mar. 10, 2014) (plaintiff could not bring a retaliation claim where the EEOC charge failed to put the EEOC on notice that plaintiff had engaged in protected activity). The second *Butts* category is not applicable because Plaintiff alleges retaliation only for filing internal complaints before being terminated, not for filing the EEOC complaint after her termination. The third category is also inapplicable because Plaintiff's retaliation claim is not a further incident of retaliation "carried out in precisely the same manner alleged in the EEOC charge." *Terry*, 336 F.3d at 151 (quoting *Butts*, 990 F.2d at 1402-03).

In sum, Plaintiff failed to exhaust her administrative remedies with respect to age discrimination, hostile work environment, and retaliation, and the Court therefore lacks jurisdiction over those claims. Even if the Court assumes, *arguendo,* that those claims are reasonably related to the race and color discrimination claims filed with the EEOC, they would be dismissed under Rule 12(b)(6), as explained below.

III.     **Failure to Allege Sufficient Facts to State a Plausible Claim**

A.  **Title VII**

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging discrimination in violation of Title VII must "include reference to sufficient facts to make [her] claim plausible . . . in light of the presumption that arises in plaintiff's favor [under *McDonnell*

*Douglas v. Green,* 411 U.S. 792, 802 (1973)] in the first stage of the litigation." *Littlejohn*, 795

F.3d at 310. "[W]hile a discrimination complaint need not allege facts establishing each element

of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum

assert nonconclusory factual matter sufficient to nudge its claims across the line from

conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d

Cir. 2014) (citations and internal quotation marks omitted). The elements of a *prima facie* case

are "an outline of what is necessary to render [a plaintiff's employment discrimination] claims

for relief plausible." *Yan v. Ziba Mode Inc.*, No. 09-cv-3000 (BSJ) (AJP), 2016 WL 1276456, at

*4 (S.D.N.Y. Mar. 29, 2016) (citations and internal quotation marks omitted).

Accordingly, "what must be plausibly supported by facts alleged in the complaint is that

the plaintiff is a member of a protected class, was qualified, suffered an adverse employment

action, and has at least minimal support for the proposition that the employer was motivated by

discriminatory intent." *Littlejohn,* 795 F.3d at 311. The alleged facts "need only give plausible

support to a minimal inference of discriminatory motivation." *Id.*. Nonetheless, a complaint is

properly dismissed if the plaintiff fails "to plead any facts that would create an inference that any

adverse action taken by any defendant was based upon [a protected characteristic of the

plaintiff]." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (internal quotation

marks omitted).

Plaintiff's allegations satisfy only three of the required elements. Plaintiff is a member of

a protected class as "a light-skinned Black female," Am. Compl. ¶ 3, and Plaintiff suffered an

adverse employment action when she was terminated.[2] Am. Compl. ¶ 74. Although Defendants

---

[2]      Plaintiff contends the CAPs were adverse employment actions. Pl. Mem. in Opp. to CUNY and Duitch, at
16. "Excessive scrutiny" normally "does not rise to the level of an adverse employment action," *Nidzon v. Konica
Minolta Bus. Solutions, USA, Inc*., 752 F. Supp. 2d 336, 350 (S.D.N.Y. 2010), but a negative performance
evaluation may constitute an adverse employment action if it is "accompanied by negative consequences, such as
demotion, diminution of wages, or other tangible loss[.]" *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d

disagree with Plaintiff's assertion that her performance was excellent, the Court finds that Plaintiff has adequately alleged that she was qualified for her position inasmuch as she was employed by RFCUNY for over thirteen years. *See Mira v. Argus Media*, No. 15-CV-9990 (RJS), 2017 WL 1184302, at *4 (S.D.N.Y. Mar. 29, 2017) ("[T]he fact that Mira worked at Argus for nearly a year and a half suggests that this element was likewise adequately pleaded.") The Amended Complaint founders on the final element, however, because it does not allege facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

### i. Race and Color Discrimination

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn,* 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)). Aside from a number of conclusory statements,[3] the Amended Complaint contains only two factual allegations that even remotely relate to race or color discrimination, and they do not suffice to raise an inference of such discrimination.

---

353, 367 (S.D.N.Y. 2008). Thus, it is conceivable that a CAP could be an adverse employment action. *See Gordon v. City of N.Y.*, No. 14 CIV. 6115 (JPO), 2015 WL 3473500, at *12 (S.D.N.Y. June 2, 2015) (holding a CAP constituted an adverse employment action where the plaintiff alleged "specific negative consequences from [the] scrutiny"). In this case, however, Plaintiff only vaguely alleges that the first CAP was "detrimental to [her] job and career," without providing any specific adverse consequences of the CAP. Am. Compl. ¶ 58. But even if the CAPs were adverse employment actions, Plaintiff has not plead facts that create an inference that the CAPs or her termination were motivated by race or age discrimination, as discussed below.

[3]   *See, e.g.*, Am. Compl. ¶ 52 ("The CAP was clearly biased and a pretext for Defendants' malicious and discriminatory intents."); *id.* ¶¶ 56-57 ("Plaintiff was also accused of not responding to items with the appropriate amount of emotions. With such egregious and juvenile accusations, Defendants' underlying malicious and discriminatory intents were apparent.")

The Amended Complaint alleges that Hoffman told Plaintiff that Dean Mogulescu had said to him that "[Plaintiff] is a black woman, so she needs to be supervised by a black woman so she can better handle her." Am. Compl. ¶ 70. This allegation is inadequate to raise an inference that Plaintiff was terminated on account of her race. In determining whether a statement is "probative of discriminatory intent," courts often consider the following factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Here, Plaintiff's allegation that Dean Mogulescu stated that Plaintiff needed to be supervised by a black woman fails to raise an inference of discriminatory motivation. Plaintiff does not allege that Dean Mogulescu was a decision-maker with respect to Plaintiff's termination, and the Amended Complaint is silent concerning the temporal proximity of the remark to Plaintiff's termination. Although a reasonable juror could view the remark as discriminatory, the Amended Complaint provides no context for the Dean's statement nor does it allege how, if at all, the statement was related to Defendants' decision to terminate Plaintiff. In short, Dean Mogulescu's statement appears to be a stray remark that lacks any causal nexus to Defendants' decision to terminate Plaintiff.[4] *See Yan*, 2016 WL 1276456, at *4 (finding that derogatory statements were "stray remarks" and insufficient to raise an inference of discriminatory motive where the plaintiff did not demonstrate how such comments affected or

---

[4]     Plaintiff argues that Dean Mogulescu made this remark "around the same time" Clarke and Duitch became Plaintiff's supervisors, which was five months before Plaintiff's termination. Pl. Mem. in Opp. to RFCUNY and Clarke, at 13. The Court need not decide whether that temporal connection would be sufficient to establish the requisite causal nexus to the decision to terminate the Plaintiff (although it is highly skeptical that it would) because Plaintiff failed to include that fact in the Amended Complaint.

were related to the termination decision).  Thus, Dean Mogulescu's alleged statement fails to raise an inference of discriminatory motivation.

The Amended Complaint also alleges that "[an]other direct report[] of Clarke, . . . Mary Louie, an Asian female, exhibited performance issues but was not treated similarly to Plaintiff and was not terminated, but instead was promoted and received a salary increase."  Am. Compl. ¶ 69.  This allegation is equally inadequate to raise an inference that Plaintiff was terminated on account of her race.  "An inference of discrimination can arise from circumstances including . . . more favorable treatment of employees not in the protected group."  *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted).  But, a plaintiff claiming disparate treatment must allege facts to establish that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).  While the Amended Complaint states that Louie was a "direct report" of Clarke, there is no allegation that Plaintiff and Louie had similar job descriptions or responsibilities, a prerequisite to raising an inference of discrimination based on disparate treatment.  *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (summary order) ("Johnson's third amended complaint did not allege that she and her co-worker had similar job descriptions or responsibilities.").  Furthermore, Plaintiff failed to allege that she and Louie were similarly situated because she did not allege any facts with respect to Louie's "performance issues."  *See Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) ("Without any information as to whether these employees were otherwise similarly situated or the specifics of their conduct, the mere allegation that two other employees—one younger and one similar in age—used profanity without being fired does not give rise to even a minimal inference of age discrimination.").  In short, Plaintiff has failed to create an inference of discrimination based upon disparate treatment.

Aside from Dean Mogulescu's statement and Louie's promotion, which are insufficient to raise an inference of race or color discrimination, the factual allegations in the Amended Complaint suggest only that the decision to terminate Plaintiff was unfair, but there is nothing to connect the alleged unfairness to Plaintiff's race or color. Therefore, the Amended Complaint does not state a claim for race or color discrimination under Title VII.

### ii. Hostile Work Environment

Plaintiff has failed to allege facts to state a plausible hostile work environment claim. To establish a hostile work environment claim under Title VII, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn,* 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The defendant's conduct must be objectively severe or pervasive enough that a reasonable person would find it hostile and abusive, and the plaintiff must subjectively perceive the work environment as abusive. *Id.* Moreover, the plaintiff also must allege that the hostile conduct occurred *because of* the protected characteristic, here her race or color. *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

Nothing alleged in the Amended Complaint rises to the level of abuse required to state a hostile work environment claim under Title VII. The only specific incidents Plaintiff alleges that are even remotely related to such a claim are: (1) Clarke issuing the first CAP, Am. Compl. ¶ 45; (2) Duitch throwing a pen on the table in Plaintiff's direction during a meeting, *id.* ¶ 46; (3) Clarke accusing Plaintiff of being disrespectful when Plaintiff learned she was not receiving the promotion, *id.* ¶ 55; (4) Duitch failing to investigate Plaintiff's complaints about the CAP, *id.* ¶¶

58-59; (5) Clarke issuing a second CAP, *id.* ¶ 62;[5] and (6) Hoffman telling Plaintiff that Dean Mogulescu had stated, out of Plaintiff's hearing, that Plaintiff needed to be supervised by a black woman, *id.* ¶ 70.

The first five alleged incidents are not sufficiently "severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (no hostile work environment when supervisor made negative statements about plaintiff, was impatient and used a harsh tone of voice, refused to meet with plaintiff, replaced plaintiff at meetings, wrongly reprimanded plaintiff, increased plaintiff's workload, and made sarcastic comments); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment when "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

The statement allegedly made by Dean Mogulescu that Plaintiff needed to be supervised by a black woman is also insufficient to support a hostile work environment claim. The alleged statement was a single, stray remark, and it was neither directed to nor heard by Plaintiff. *See Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997))); *Carr v. N. Shore-Long Island Jewish Health Sys.*, No. 14 CIV. 3157 (JS), 2015 WL 4603389 at *3 (E.D.N.Y. July 30, 2015) (overheard discriminatory comment without more is insufficient to state claim); *Jowers v. Fam. Dollar Stores, Inc.*, No. 09 CIV. 2620, 2010 WL 3528978, at *1, 3

---

[5] Plaintiff and Clarke also had a failure of communication regarding scheduling an exterminator, *id.* ¶¶ 63-67. The Court fails to see how a miscommunication could rise to the level of a hostile work environment.

(S.D.N.Y. Aug. 16, 2010) (single statement that "black people are lazy and incompetent" made eight days prior to plaintiff's termination was a stray remark insufficient to establish an inference of discrimination on its own), *aff'd*, 455 F. App'x 100 (2d Cir. 2012).

Even if these various incidents added up to a hostile environment, Plaintiff entirely fails to allege a basis from which the Court can infer that Defendants took these actions *because of* her race or color. Plaintiff does not allege any facts suggesting the necessary discriminatory motive behind the alleged hostility and instead states in conclusory terms that "[w]ith such egregious and juvenile accusations, Clarke's underlying malicious and discriminatory intents were apparent" and that "Clarke's actions were permeated with malicious and discriminatory intentions." Am. Compl. ¶¶ 52, 57. Those conclusory allegations are insufficient to state a claim for hostile work environment. *See Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001), *as amended* (Apr. 20, 2001) ("[B]ald assertions and conclusions of law are not adequate, and a complaint consisting only of naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." (internal quotation marks omitted)).

### iii. Retaliation

Plaintiff has failed to allege facts to state a claim for retaliation. Title VII prohibits retaliation against an employee who has opposed any employment practice that is unlawful under Title VII. 42 U.S.C. § 2000e-(3)(a). Retaliation claims are analyzed pursuant to the *McDonnell Douglas* burden-shifting evidentiary framework. *Littlejohn*, 795 F.3d at 315. To allege a *prima facie* case of retaliation under Title VII, a plaintiff must allege that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, P.C., 716 F.3d 10, 14

(2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). As with discrimination claims, "allegations in [support of a retaliation claim] need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316.

Protected activity includes any action that protests or opposes statutorily prohibited discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). "Informal complaints to supervisors, instituting litigation, or filing a formal complaint are protected activities under Title VII." *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y.2014) (citations and internal quotation marks omitted). The complaints, however, whether formal or informal, must be about some act that the employee reasonably and in good faith believes is unlawful under the anti-discrimination laws. *See Kelly*, 716 F.3d at 14-15. Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity. *See Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107–08 (2d Cir. 2011) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at *conduct prohibited by Title VII*." (internal quotation marks omitted)); *Williams v. Time Warner, Inc.*, 09 CIV. 2962 (RJS) 2010 WL 846970 at *4 (S.D.N.Y. Mar. 3, 2010) ("[W]orkplace difficulties entirely consistent with non-race-non-gender personality disputes . . . are plainly not actionable under statutes intended to root out discrimination on the basis of certain statutorily defined protected characteristics."), *aff'd*, 440 F. App'x 7 (2d Cir. 2011).

Plaintiff has not alleged that she engaged in any protected activity prior to her termination. Plaintiff spoke to various people about the alleged inaccuracies in and unfairness of the CAP, Am. Compl. ¶¶ 53, 58, 60, but nothing in the Amended Complaint suggests that

anything she said would have alerted a reasonable person that she was complaining about discrimination.[6]  Plaintiff alleges that she complained to Duitch about Clarke and the CAP because it was "unfounded, false and detrimental to Plaintiff's job and career," *id.* ¶ 58, but nowhere in the Amended Complaint does Plaintiff allege that she complained to anyone about discrimination.  As such, Plaintiff has failed to state a plausible claim of retaliation under Title VII.

### B.  Age Discrimination

Plaintiff has failed to allege facts to state a plausible claim for age discrimination under the ADEA.  The ADEA prohibits employers from discharging or otherwise discriminating against any individual on the basis of age.  29 U.S.C. § 623(a).  The statute defines the protected age group as individuals at least 40 years of age.  *Id.* at § 631(a).  The Second Circuit has extended the *Littlejohn* Title VII analysis to ADEA claims, holding that a plaintiff need only plausibly plead that she is "a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Andy Frain Servs.*, 638 F. App'x at 70 (quoting *Littlejohn*, 795 F.3d at 311).

Although Plaintiff has plausibly pled that she is a member of the protected class, was qualified for the position, and suffered an adverse employment action, the Amended Complaint contains no allegations from which the Court could infer that her age played any part in the employer's motivation.  Plaintiff's only support for her claims of age discrimination is an allegation that Defendants replaced her with "a much younger female under the age of forty."[7]

---

[6]      Although Plaintiff engaged in protected activity when she filed the EEOC complaint, Plaintiff has not alleged that she suffered a materially adverse action after filing the EEOC complaint.

[7]      Plaintiff claims that on several occasions Clarke said to Plaintiff, "[a]s you get older, it's harder to keep up."  Decl. of Rudy A. Dermesropian in Opp. to CUNY and Duitch's Mot. to Dismiss, Ex. 2, ¶ 4 (Dkt. 37-2).  The

Am. Compl. ¶ 79.  Because Plaintiff provides nothing more to support her claims of age discrimination, this claim must be dismissed.  *See Marcus*, 661 F. App'x at 32-33 ("[T]he mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive.").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  Plaintiff's ADEA claim alleging age discrimination and Title VII claims alleging a hostile work environment and retaliation are dismissed with prejudice because Plaintiff failed to exhaust her administrative remedies as to those claims.  Plaintiff's Title VII race and color discrimination claims are dismissed without prejudice.  If Plaintiff chooses to amend her complaint further, she must do so no later than **July 21, 2017**, and she must allege facts that go beyond the allegations included in her Amended Complaint and the affidavit filed in support of her opposition to Defendants' motions to dismiss.  Because all of Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and local law claims. The Clerk of Court is respectfully directed to close the open motions at docket entries twenty-four and twenty-nine.

**SO ORDERED.**

**Date:  July 7, 2017**                          **VALERIE CAPRONI**
       **New York, New York**                          **United States District Judge**

---

Court need not consider this fact because it was not alleged in the Amended Complaint, but even if it had been, Plaintiff's ADEA claim would still be dismissed because, as discussed above, Plaintiff failed to exhaust her administrative remedies with respect to this claim.